## Bothwell, Appellant, *v.* Bothwell.

*Divorce—Desertion—Evidence—Insufficiency.*

A decree in divorce on the ground of desertion is properly refused, when the record shows that respondent had made repeated attempts to renew the marital relations, and that her conduct was not such as would justify a divorce on the ground of cruel and barbarous treatment.

Argued May 8, 1924. Appeal, No. 178, April T., 1924, by libellant, from decree of C. P. Allegheny Co., Oct. T., 1922, No. 2219, dismissing libel, in divorce in the case of Edward G. Bothwell v. Margaret V. Bothwell. Before HENDERSON, TREXLER, LINN and GAWTHROP, JJ. Affirmed.

Libel in divorce. Before EVANS, J.

The case was referred to James G. Nevin, Esq., as master, who recommended that a divorce be refused.

Error Assigned—Opinion of the Court. [83 Pa. Superior Ct.

On exceptions to the master's report the court dismissed the exceptions and refused to grant a divorce. Libellant appealed.

*Error assigned* was the decree of the court.

*Joseph Stadtfeld,* and with him *Richard W. Martin,* for appellant.

*William D. Grimes,* for appellee.

OPINION BY TREXLER, J., July 2, 1924:

The parties were married on Tuesday, August 31, 1920, and took rooms in the William Penn Hotel in Pittsburgh where they remained until Saturday, September 4th. The wife continued in her former employment as stenographer. On the latter day they went to visit the mother of the husband at Erie with the intention of spending Labor Day with her, but the wife insisted upon their return to Pittsburgh and they came back on the next morning train. After a stay of only a few hours at the Fort Pitt Hotel, they again took rooms at the William Penn Hotel. On the 7th of September the respondent threatened to kill the libellant, but there was no personal violence, the argument continuing all night and the following morning the respondent expressed a doubt as to whether she would continue to live with the libellant. She returned to the room at the hotel at the regular time on the evening of the 8th and the libellant accompanied her to her former room on the North Side. Neither party regarded the William Penn as their home, their financial standing not allowing them to live there. The wife continued to live at her former boarding house and was visited by the libellant on several occasions during which the most intimate relations of married life were resumed. On one of these occasions respondent struck libellant. In the meantime the parties were mak-

ing inquiries and visiting different locations in order to find a suitable place for a residence. On the evening of September 26, 1920, the husband visited the wife at her room and another argument arose, the wife cursing the husband and threatened to kill him, but there was no attack made upon him except she attempted to push him down stairs. There was testimony that the wife was in possession of a pocket revolver, but she did not use it. On October 26th, the parties entered into a written agreement whereby libellant agreed to support his wife and later an order of court reduced the amount. Following September 26th, respondent and libellant met at the instance of the former for the purpose of effecting a reconciliation, respondent expressing her willingness to live with libellant. All during the period covered by the above narration the wife was pregnant, and in passing we may state that some allowance should be made by reason of this fact. She certainly exhibited a good many crotchets and seemed to be hard to get along with. The master and the lower court both came to the conclusion that the facts produced did not constitute desertion. Certainly the marriage relation was sustained until the 26th of September. There was no permanent home and both parties seemed to have in contemplation a new place of abode. A constructive desertion is claimed as occurring on that date on the ground that the husband was entitled to leave the wife because she was so cruel and barbarous and gave such indignities to his person as to justify his leaving. There is lacking the evidence of a continued course of action in pursuance of a malicious intent. It is true that on two occasions the respondent struck the libellant and threatened to kill him, but she made no attempt to carry such threat into effect. The wife was very irritable due more to her condition probably than to any inherent perverseness. Notwithstanding the repeated requests of the wife to her husband to be reconciled, and in face of the fact that a

resumption of the marriage relation would be desirable because probably a child would be born which would naturally require the care of both parents, the husband, even after the child was born, declared he was done with the wife and would never live with her. There is a large mass of testimony as to the acts of the respondent subsequent to September 26, 1920, but a review of them would throw no light on the question of desertion. She was anxious apparently to have the husband live with her and she went to great extremes to accomplish this. She acted improperly in some respects, still her persistence would lead to the belief that she was sincere in her efforts to again have him resume relations. Although the law gives the deserting party the right to return within two years, the husband's position was that having once parted from his wife he would never have anything more to do with her. We do not believe that her conduct on the 26th of September, 1920, justified the husband once and for all to sever the marriage relation. We think it was plainly his duty to accept the proffered reconciliation from his wife. We have stated before that we do not think that her conduct would entitle the husband to a divorce for cruel and barbarous treatment or indignities to his person. The desire of his wife to get rid of him on the 26th of September, 1920, applied only to that date and when she afterwards made efforts to resume friendly relations, it does not lie in his mouth, under the circumstances of the case, to say that she was not sincere in her attitude. We have decided convictions to the contrary.

The decree is affirmed, the appellant to pay the costs.